# EXHIBIT 1

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

|  |  |
|---|---|
| Brian Walton, <br><br> Plaintiff, <br><br> vs. <br><br> Medtronic USA, Inc. <br><br> Defendant. | Case Type: Employment <br> Court File No.: _____ <br> Judge: _____ <br><br><br> **SUMMONS** |

THIS SUMMONS IS DIRECTED TO DEFENDANT MEDTRONIC USA, INC., BY AND THROUGH THEIR REGISTERED AGENT CORPORATION SERVICE COMPANY, 2345 RICE STREET, SUITE 230, ROSEVILLE, MN 55113.

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

    HALUNEN LAW
    1650 IDS Center
    80 South Eighth Street
    Minneapolis, MN  55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: December 20, 2021

**HALUNEN LAW**

*/s/ Colin J. Pasterski*
Clayton D. Halunen, #0219721
Blaine L.M. Balow, #0396370
Colin J. Pasterski, #0398493
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099
*halunen@halunenlaw.com*
*balow@halunenlaw.com*
*pasterski@halunenlaw.com*
*ATTORNEYS FOR PLAINTIFF*

2

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Brian Walton,<br><br>              Plaintiff,<br>v.<br><br>Medtronic USA, Inc.,<br><br>              Defendant. | Case Type: Employment<br>Court File No.: _____<br>Judge: _____<br><br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, Brian Walton, by his undersigned counsel, for his Complaint against Medtronic USA, Inc., and respectfully states and alleges as follows:

## INTRODUCTION

1.      This action arises out of Defendant Medtronic USA, Inc.'s wrongful termination of Plaintiff Brian Walton's employment as a Senior District Manager in the Neuromodulation Division for the Northwest and Midwest Districts. Plaintiff, 56, suffered from age, sex, and race discrimination when he was terminated under the guise of a reorganization and then ultimately replaced by a substantially younger African-American female who was less qualified and experienced, in order to satisfy Defendant's internal diversity goals.

2.      This action further arises out of Defendant's wrongful interference with Plaintiff from continuing to participate in, and his ability to accrue benefits under, Defendant's Pension Plan by terminating Plaintiff's employment on the basis of his participation in Defendant's Pension Plan and replacing him with an individual who does not participate in Defendant's Pension Plan.

## PARTIES

3.      Plaintiff is a white male resident of Kansas City, Missouri. Plaintiff was 56 years old when Defendant terminated his employment.

4.      Defendant Medtronic USA, Inc., is a business corporation with its principal place of business located in the State of Minnesota.

5.      At all times relevant hereto, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of the Minnesota Human Rights Act. ("MHRA"), Minn. Stat. § 363A, subds. (15) and (16).

6.      At all times relevant hereto, Plaintiff was a participant of Defendant's Pension Plan, which is an ERISA plan as that term is defined in ERISA.

7.      Defendant's Pension Plan is an ERISA plan subject to § 510 of the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1140.

## JURISDICTION AND VENUE

8.      This is an individual age, sex, and race discrimination and ERISA interference case. Defendant engaged in disparate treatment of employees on the basis of their age, sex, race, and/or their participation in Defendant's Pension Plan with regard to the terms and conditions of employment and terminations. Defendant engaged in a pattern or practice of discrimination on the basis of age, sex, race, and/or participation in Defendant's Pension Plan in connection with terminations, promotions, selection process, and opportunities for employment.

9.      Plaintiff seeks relief, in part, under the MHRA, Minn. Stat. § 363A.01, *et seq*. This Court has jurisdiction over this matter as his MHRA claims involve violations of Minnesota law, and Plaintiff routinely visited Minnesota for work over the course of his career with Defendant.

10.      Venue is proper, pursuant to Minn. Stat. § 542.09, because Defendant resides within the borders of Hennepin County.

## FACTS

A.   PLAINTIFF'S EMPLOYMENT AND SUCCESSES AT DEFENDANT.

11.   Plaintiff began his employment at Defendant in 1996 as a Sales Representative.

12.   In Plaintiff's role as a Sales Representative, he received numerous accolades and positive reviews. By way of example, he consistently surpassed sales targets, grew annual sales by over 50% over a period of 5 years, and was awarded President's club twice.

13.   Given the foregoing successes, it is not surprising that Plaintiff was promoted to Senior District Manager of Defendant's Neuromodulation Division in April of 2000.

14.   As an SDM of the Neuromodulation Division, Plaintiff's district was consistently ranked in the top five (out of approximately 40 districts). Plaintiff led his district to achieve numerous awards and exceeded metrics, including (a) receiving the District of the Year award in 2006; (b) managing the sole district at Defendant that had all the territories within the district surpassing its sales quotas in 2018; (c) receiving the Peak Performance awards in 2018, 2019, and 2020.

15.   In sum, Plaintiff was qualified for the position he held and performed his duties in a satisfactory manner.

B.   PLAINTIFF'S PARTICIPATION IN DEFENDANT'S PENSION PLAN

16.   As an employee hired before May 1, 2005, Plaintiff elected to participate in Defendant's Pension Plan, which provided for an annual amount payable to Plaintiff during his lifetime and is determined using the following formula: 40% of Plaintiff's Final Average Pay Minus Plaintiff's Social Security Allowance Times Plaintiff's years of credited service Divided By 30. If an employee has more than 30 years of credited service, the 40% is increased by ½% for each year of credited service in excess of 30 years.

17.     Plaintiff was expected to attain 30 years of credited service at Defendant in 2026.

18.     Effective January 1, 2016, Defendant closed its Pension Plan to new employees, but existing employees would continue to participate and accrue benefits under the existing formula.

19.     Citing "challenging economic conditions" and stating that its Pension Plan is "more expensive to fund and sustain," Defendant subsequently announced that, effective May 1, 2027, Defendant will end future accruals to, or freeze, the Pension Plan. Benefits accrued through April 30, 2027, will be protected and paid out pursuant to the terms of Defendant's Pension Plan.

20.     Defendant engages in a systemic pattern and practice of utilizing reductions in force or reorganizations in order to terminate or replace employees who participate in Defendant's Pension Plan with employees who do not participate or are not able to participate in Defendant's Pension Plan.

**C.      PLAINTIFF SUFFERED AN ADVERSE EMPLOYMENT ACTION, WAS REPLACED BY AN INDIVIDUAL OUTSIDE OF HIS PROTECTED CLASS, AND CAN PROVIDE FACTS THAT PERMIT AN INFERENCE OF DISCRIMINATION.**

21.     Defendant engages in a systematic pattern and practice by using reductions in force or reorganizations in order to change the makeup of its workforce, whether it be based on age, sex, or race. Indeed, Defendant routinely uses protected characteristics, including age, sex, and race, when making employment decisions affecting the term, conditions, or privileges of employment. And Defendant does not even try to hide it, as it institutes a quota-based directive to achieve specific percentages of gender/racial representation in leadership positions; specifically, 40% female and 20% persons of color by 2020, also known as the 40-20-20 plan.

22.     Effective July 2, 2021, Defendant instituted a purported companywide reorganization. The purported reorganization resulted in the termination of a five out of forty-three

District Sales Managers employed in Defendant's Neuromodulation Division. Plaintiff (age 56) was older than 92% of the individuals considered for termination.

23.     Defendant claims Plaintiff's position was selected for elimination based on criteria involving a relative evaluation of qualifications, specific experience, and abilities and strengths.

24.     Defendant did not eliminate Plaintiff's position. Instead, Defendant transferred Plaintiff's territory and job responsibilities to another District Manager, Shelley Edington. Edington is an African-American woman, and is substantially younger than Plaintiff. Ms. Edington does not participate in Defendant's Pension Plan.

25.     Edington possessed minimal managerial experience, having only worked as a District Sales Manager for six months prior to Defendant announcing its reorganization. In comparison, Plaintiff worked in that role successfully for 20 years.

26.     Before she became a District Sales Manager, Edington reported to Plaintiff as a Sales Representative for two years, and was one of Plaintiff's lowest performing sales representatives within his district.

27.     If Defendant objectively applied its elimination criteria, Plaintiff could not have been selected for termination over Ms. Edington. Instead, Defendant's claim that Plaintiff's position was eliminated as part of a reorganization was merely a pretext to cover up invidious discrimination. Defendant's companywide reorganization was nothing but sham and an opportunity to change the makeup of its workforce, specifically using sex, race, age, and age-based characteristics or using participation in Defendant's Pension Plan in its decision-making process

28.     While the goal of achieving diversity in leadership has recognized value, terminating high performing employees without justification or purpose other than to achieve diversity constitutes an adverse employment action based on sex, race, and age.

## CAUSES OF ACTION

### COUNT I
### DISPARATE TREATMENT AGE DISCRIMINATION
### IN VIOLATION OF THE MHRA

29.    Plaintiff realleges and incorporates by reference each preceding paragraph as if fully rewritten here.

30.    Defendant, through its managers, officials, employees and agents acting on its behalf and within the scope of their employment, engaged in unlawful employment practices with respect to Plaintiff and other older employees in violation of the MHRA, Minn. Stat. § 363A.01, *et seq*. These practices include discriminating against Plaintiff and other older employees with respect to terminating, hiring, tenure, compensation, terms, conditions, and/or privileges of employment because of age in violation of the MHRA; specifically, Minn. Stat. § 363A.08, subd. 2.

31.    Plaintiff was qualified to perform the essential functions of his job.

32.    Plaintiff's age was a motivating factor in Defendant's termination of his employment.

33.    Plaintiff suffered an adverse employment action when Defendant selected him to be terminated through the reduction in force on July 2, 2021, over his substantially younger colleague.

34.    Defendant claims that it used eligibility factors that "involved a relative evaluation of [Plaintiff's] qualifications, specific experience, and abilities and strengths."

35.    Plaintiff possessed superior qualifications, specific experience, and abilities and strengths as compared to the substantially younger colleague who Defendant chose to retain over Plaintiff.

6

36.     The effect of the unlawful practices described above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his age.

37.     Defendant engaged in the unlawful conduct described above intentionally and with reckless disregard for the rights of Plaintiff.

38.     As a direct and proximate result of Defendant's conduct in violation of the MHRA, Plaintiff has suffered and will continue to suffer loss of wages and benefits, has endured and will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT II
## DISPARATE IMPACT AGE DISCRIMINATION
## IN VIOLATION OF THE MHRA

39.     Plaintiff realleges and incorporates by reference each preceding paragraph as if fully rewritten here.

40.     A disparate impact theory of proof may be used in claims of age discrimination claims under the MHRA.

41.     Defendant claims that it used eligibility factors that "involved a relative evaluation of [Plaintiff's] qualifications, specific experience, and abilities and strengths."

42.     Defendant failed to apply its eligibility factors in a neutral and non-discriminatory manner.

43.     Defendant's facially neutral policies and practices in implementing the reduction in force disproportionately led to the termination of older employees, including Plaintiff, in violation of the law.

44.     As a direct and proximate result of Defendant's conduct in violation of the MHRA, Plaintiff has suffered and will continue to suffer loss of wages and benefits, has endured and will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

**COUNT III**
**SEX DISCRIMINATION**
**IN VIOLATION OF THE MHRA**

45.     Plaintiff realleges and incorporates by reference each preceding paragraph as if fully rewritten here.

46.     Defendant, through its managers, officials, employees and agents acting on its behalf and within the scope of their employment, engaged in unlawful employment practices with respect to Plaintiff in violation of the MHRA, Minn. Stat. § 363A.01, *et seq*. These practices include discriminating against Plaintiff with respect to terminating, hiring, tenure, compensation, terms, conditions, and/or privileges of employment because of sex in violation of the MHRA; specifically, Minn. Stat. § 363A.08, subd. 2.

47.     Plaintiff was qualified to perform the essential functions of his job.

48.     Plaintiff's sex was a motivating factor in Defendant's termination of his employment.

49.     Plaintiff suffered an adverse employment action when Defendant selected him to be terminated through the reduction in force on July 2, 2021 over his female colleague with significantly less skills, experience, and qualifications.

50.     Defendant claims that it used eligibility factors that "involved a relative evaluation of [Plaintiff's] qualifications, specific experience, and abilities and strengths."

51.     Plaintiff possessed superior qualifications, specific experience, and abilities and strengths as compared to the female colleague who Defendant chose to retain over Plaintiff.

52.     The effect of the unlawful practices described above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his sex.

53.     Defendant engaged in the unlawful conduct described above intentionally and with reckless disregard for the rights of Plaintiff.

54.     As a direct and proximate result of Defendant's conduct in violation of the MHRA, Plaintiff has suffered and will continue to suffer loss of wages and benefits, has endured and will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT IV
## RACE DISCRIMINATION
## IN VIOLATION OF THE MHRA

55.     Plaintiff realleges and incorporates by reference each preceding paragraph as if fully rewritten here.

56.     Defendant, through its managers, officials, employees and agents acting on its behalf and within the scope of their employment, engaged in unlawful employment practices with respect to Plaintiff and other white employees in violation of the MHRA, Minn. Stat. § 363A.01, *et seq*. These practices include discriminating against Plaintiff with respect to terminating, hiring, tenure, compensation, terms, conditions, and/or privileges of employment because of race in violation of the MHRA; specifically, Minn. Stat. § 363A.08, subd. 2.

57.     Plaintiff was qualified to perform the essential functions of his job.

58.    Plaintiff's race was a motivating factor in Defendant's termination of his employment.

59.    Plaintiff suffered an adverse employment action when Defendant selected him to be terminated through the reduction in force on July 2, 2021 over his African-American colleague in order to satisfy Defendant's diversity goals.

60.    Defendant claims that it used eligibility factors that "involved a relative evaluation of [Plaintiff's] qualifications, specific experience, and abilities and strengths."

61.    Plaintiff possessed superior qualifications, specific experience, and abilities and strengths as compared to his African-American colleague who Defendant chose to retain over Plaintiff.

62.    The effect of the unlawful practices described above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race.

63.    Defendant engaged in the unlawful conduct described above intentionally and with reckless disregard for the rights of Plaintiff.

64.    As a direct and proximate result of Defendant's conduct in violation of the MHRA, Plaintiff has suffered and will continue to suffer loss of wages and benefits, has endured and will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

### COUNT V
### VIOLATION OF ERISA § 510

65.    Plaintiff realleges and incorporates by reference each preceding paragraph as if fully rewritten here.

10

66.     Section 510 of ERISA, 29 U.S.C. § 1140, makes it unlawful "[f]or any person to discharge, fine, suspend, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

67.     The prohibitions of § 510 are aimed primarily at preventing employers from discharging or discriminating against employees in order to keep them from obtaining vested pension rights.

68.     By its terms, § 510 protects plan participants from termination motivated by an employer's desire or intent to prevent a pension plan from vesting or by an employer's desire or intent to prevent a participant from exercising a right to which the participant is entitled to under the pension plan.

69.     Unlawful interference under Section 510 includes terminating an employee in order to interfere with the employee's ability to receive future benefits under an ERISA plan. ERISA Section 510 was designed to protect the employment relationship which gives rise to an individual's pension rights. This means that a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way.

70.     Here, Defendant intentionally terminated Plaintiff and other employees participating in the Pension Plan to interfere with their continued participation and accrual of benefits in the Pension Plan.

71.     In selecting employees for termination under the reduction in force, Defendant targeted employees who were participants in the Pension Plan.

72.     Defendant claims Plaintiff's position was selected for elimination based on criteria involving a relative evaluation of qualifications, specific experience, and abilities and strengths.

73.     Defendant did not eliminate Plaintiff's position. Instead, Defendant transferred Plaintiff's territory and job responsibilities to Edington, who is outside of his protected class. Furthermore, Edington does not participate in Defendant's Pension Plan.

74.     Defendant's actions described herein violate 29 U.S.C. § 1140, which prohibits any person from discriminating against or terminating a participant or beneficiary for exercising any right to which he was entitled under an employee benefit plan or for the purpose of interfering with the attainment of any right under a plan or under ERISA.

75.     As a result of Defendant's violation of Section 510 of ERISA, 29 U.S.C. § 1140, Plaintiff has suffered and will continue to suffer damages in the form of lost salary and benefits, including Defendant's Pension Plan, attorneys' fees and expenses, and other serious damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment against Defendant for the following relief:

A.     That the practices of Defendant complained of herein be adjudged, decreed, and declared to be violations of the rights secured to Plaintiff;

B.     That Defendant be required to make Plaintiff whole for its adverse, discriminatory, retaliatory, and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor;

C.     That Plaintiff be awarded front pay and the monetary value of any employment benefits he would have been entitled to in his position at Defendant;

D.  That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein this Complaint;

E.  That Plaintiff be awarded compensatory damages, including loss of past and future income, emotional distress, loss of reputation, and related damages in an amount to be established at trial;

F.  That the Court award Plaintiff his reasonable attorneys' fees, costs, and disbursements pursuant to state law; and

G.  That the Court grant such other and further relief as it deems fair and equitable.

**Plaintiff demands his trial by jury on all counts where available.**

Dated: December 20, 2021

**HALUNEN LAW**

*/s/ Colin J. Pasterski*
Clayton D. Halunen, #0219721
Blaine L.M. Balow, #0396370
Colin J. Pasterski, #0398493
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
halunen@halunenlaw.com
balow@halunenlaw.com
pasterski@halunenlaw.com
*ATTORNEYS FOR PLAINTIFF*

13

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that, pursuant to Minn. Stat. § 549.211, sanctions, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated: December 20, 2021                    /s/ Colin J. Pasterski
                                            Colin J. Pasterski



# Notice of Service of Process

C9H / ALL
**Transmittal Number: 24226694**
**Date Processed: 12/20/2021**

**Primary Contact:**   Vicki Ann Swanson
Medtronic
710 Medtronic Pkwy
Minneapolis, MN 55432-5603

**Electronic copy provided to:**   Julie Bonczek

| | |
|---|---|
| **Entity:** | Medtronic USA, Inc.<br>Entity ID Number  3810351 |
| **Entity Served:** | Medtronic USA, Inc. |
| **Title of Action:** | Brian Walton vs. Medtronic USA, Inc. |
| **Matter Name/ID:** | Brian Walton vs. Medtronic USA, Inc. (11844169) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Hennepin County District Court, MN |
| **Case/Reference No:** | Not Shown |
| **Jurisdiction Served:** | Minnesota |
| **Date Served on CSC:** | 12/20/2021 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Halunen Law<br>612-605-4098 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com