UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN WALTON, | Case No. 22-CV-50 (PJS/JFD) |
| Plaintiff, | |
| v. | ORDER |
| MEDTRONIC USA, INC., | |
| Defendant. | |

This case is before the Court on Plaintiff Brian Walton's Motion to Compel Discovery (Dkt. No. 58). The case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court held a motion hearing on April 7, 2023. Colin Pasterski argued for Mr. Walton, and Claire Deason argued for Medtronic USA, Inc. ("Medtronic"). As set forth below, the Court grants in part and denies in part Mr. Walton's motion.

I.   INTRODUCTION

Mr. Walton sued his former employer, Medtronic, after he was fired in July 2021. Mr. Walton alleges that his firing was the result of age, sex, and race discrimination because his firing was driven by a Medtronic-wide initiative to place certain percentages of women and people of color in leadership positions within the company. Medtronic replies that Mr. Walton was selected for termination at a lower level within the company, when a company-wide reorganization resulted in Medtronic having two Senior District Managers (Mr. Walton being one) in the same geographic area. Mr. Walton asserts that because a

1

corporate-wide diversity plan cost him his job, he should have discovery at the corporate level. Medtronic replies that the decision to fire Mr. Walton was made locally, that he has no evidence his termination was a consequence of the national diversity initiative, and the discovery to which he is entitled is therefore also local in scope.

Mr. Walton began working for Medtronic in 1996 and by the time he was terminated had become a Pain Therapies Senior District Manager in the Neuromodulation group for the Northwest and Midwest Districts. (Am. Compl. ¶ 1, Dkt. No. 11.) Mr. Walton alleges that Medtronic replaced him with a younger Black woman with less experience in order to meet Medtronic's goal of having at least 40% of the leadership positions in the company occupied by women, and at least 20% by people of color, by 2020 (colloquially referred to as the "40-20-20 plan"). (*Id.* ¶¶ 29, 32, 37–72.) Mr. Walton alleges that Medtronic used reductions in force (RIFs) to achieve its goals. (*Id.* ¶ 29.) In July 2021, Mr. Walton alleges that Medtronic underwent a company-wide reorganization in which five District Sales Managers in the Neuromodulation Division were terminated, including Mr. Walton. (*Id.* ¶¶ 30–31.)

Medtronic states that Mr. Walton lost his job following a company-wide reorganization in 2021. (Def.'s Mem. Opp'n Mot. Compel at 1, Dkt. No. 66.) After the reorganization, Medtronic's Pain Modulation Group had two Senior District Managers in the same geographic area, Mr. Walton and another person. (*Id.* at 2.) The two were compared side-by-side, and Mr. Walton, because he had the weaker record, was chosen for termination. (*Id.* at 1.) Medtronic alleges that its 40-20-20 plan was a corporate-level initiative, but that the people who decided to terminate Mr. Walton were his immediate

2

supervisor, and the supervisor of his immediate supervisor, with input from three human resources professionals detailed to support the group within which Mr. Walton worked. (*Id.* at 5–6.) Because the termination decision was local, and because Mr. Walton, in Medtronic's view, has no evidence that he lost his job because of a nationwide diversity plan, Medtronic argues that the discovery to which Mr. Walton is entitled is also local.

Mr. Walton now moves to compel the national-level discovery about the diversity plan which he has demanded but which Medtronic has refused to give him.

Mr. Walton served discovery requests in November 2022. The discovery requests now at issue fall into four categories: (1) information and documents regarding a RIF in which Mr. Walton lost his job, (2) information and documents regarding Medtronic's diversity initiatives, (3) Medtronic's organization charts, and (4) electronically stored information (ESI) from various custodians. (Pl.'s Mem. Supp. Mot. Compel at 3, Dkt. No. 60.) Medtronic resists discovery on the grounds that Mr. Walton's requests seek irrelevant information and are not proportional to the needs of the case. (Def.'s Mem. Opp'n at 2.)

II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) establishes the scope and limitations of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking the discovery must meet a threshold burden to show relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). "The party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183

3

(ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, No. 00-CV-4080 (MWB), 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)).

Rule 26 also requires information sought in discovery to be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

### III. ANALYSIS

#### A. RIF Discovery

Medtronic argues that Mr. Walton is not entitled to expansive discovery into Medtronic's company-wide RIF because his allegation of company-wide discrimination is purely speculative. (Def.'s Mem. Opp'n at 6.) Company-wide discovery is usually not allowed "absent a showing of a particular need for the requested information." *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 794 (8th Cir. 2009) (citing *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997)). Company-wide discovery may be appropriate, for example, when a "the employee was terminated due to a corporate-level downsizing decision" that was merely implemented at the local level. *Id.* An employee must present some facts that non-local management was involved in the termination. *Id.*

In Interrogatory No. 10, Mr. Walton asks Medtronic to identify all individuals in the Pain Therapies and Interventional Sales organization who had any role in deciding to

4

reorganize and restructure that organization in 2020–21. (*See* Pl.'s Mem. Supp. at 4.) Medtronic raised some boilerplate objections (relevance, vagueness, ambiguity, overbreadth, undue burden, and proportionality)[1] but also explained that some of the individuals did not have a role in Plaintiff's termination. Notwithstanding those objections, Medtronic identified the five individuals who were directly involved in Mr. Walton's termination. Mr. Walton now contends that Medtronic should also identify the individuals who participated in or possess information about the large-scale reorganization and restructuring. The Court disagrees. The additional information requested in response to this interrogatory is not relevant to Mr. Walton's claims or proportional to the needs of the case. Mr. Walton has not shown that management above his direct supervisor and the next-level supervisor were involved in his termination, nor has he shown a particular need for company-wide discovery. His allegation of a pattern-or-practice of discrimination does not automatically open the door to discovery about all individuals who had any role in deciding

---

[1] Medtronic takes issue with Mr. Walton's characterization of some of its objections as "boilerplate." (Def.'s Mem. Opp'n at 14.) But because, for example, Medtronic objects to multiple discovery requests by claiming the request is "vague, ambiguous, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence" (*see* Pl.'s Mem. Supp. at 11–12), with no attempt to tie these general characterizations to the particular discovery request being objected to, the Court finds boilerplate is an apt description of at least some of Medtronic's objections. Federal Rule of Civil Procedure 33(b)(4) provides that a party's objections to an interrogatory "must be stated with specificity." Boilerplate objections "are not consistent with the Federal Rules of Civil Procedure." *Lubrication Techs., Inc. v. Lee's Oil Serv., LLC*, No. 11-cv-2226 (DSD/LIB), 2012 WL 1633259, at *5 n.5 (D. Minn. Apr. 10, 2012). A court may treat boilerplate and non-specific objections as ineffective. *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-cv-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020). But even when an objection is boilerplate, the Court may decide a discovery dispute based on relevance or proportionality grounds. *Klein v. Affiliated Grp., Inc.*, No. 18-cv-949 (DWF/ECW), 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019).

to reorganize and restructure the Pain Therapies and Interventional Sales organization in 2020–21. Medtronic identified the five individuals involved in the decision to terminate Mr. Walton, as well as the individuals who assumed his job duties and the individuals who competed to assume those duties. Medtronic has also provided the evaluation forms used to compare employees in the Central Region—Mr. Walton's region—who were competing for the Pain Therapies and Interventional District Manager roles. Finally, as in *Semple*, the decision to terminate Mr. Walton's employment was made by his supervisor and next-level supervisor, not Medtronic leadership that initiated the RIF.

Through Interrogatory No. 11, Mr. Walton asks for the identities of anyone in Medtronic's Neuromodulation Division who was considered for termination under the RIF, which he characterizes as "comparator evidence," and for each individual, their dates of employment, birthdate, race, ethnicity, and sex. (*See* Pl.'s Mem. Supp. at 5–6.) Medtronic objected in part on the basis that the information was already in Plaintiff's possession or control because it gave him an Older Workers Benefit Protection Act list when he was terminated. Mr. Walton replies that the list does not identify the race, gender, or name of any individual, and thus is not useful. "In employment discrimination cases, a plaintiff may offer comparator evidence to show that they were treated differently than other employees who were 'similarly situated in all relevant respects' for committing 'infractions of comparable seriousness.'" *McKey v. U.S. Bank Nat'l Ass'n*, No. 17-cv-5058 (D. Minn. July 9, 2018) (quoting *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084–85 (8th Cir. 2013)). "[C]omparator evidence is strongest 'when the circumstances faced by the putative comparators are most similar to the plaintiff's . . . .'" *Id.* The Court orders Medtronic to

6

supplement its response to Interrogatory No. 11. Mr. Walton seeks the identities of individuals who were similarly situated to him because they worked in the same division he did and they were considered for termination under the RIF. This would be useful comparator evidence. Medtronic agrees that comparator evidence is a legitimate object of discovery in employment discrimination cases. Because of the information deficiencies identified by Mr. Walton, the list given to him upon his termination does not suffice as comparator evidence.

Interrogatory No. 12 asks for the identities of anyone in the Neuromodulation Division who was terminated in the RIF, including their dates of employment, birthdates, race, ethnicity, and sex. (*See* Pl.'s Mem. Supp. at 6.) Medtronic's objections and answer mirror those to Interrogatory No. 11. For the reasons set forth above with respect to Interrogatory No. 11, the Court orders Medtronic to supplement its response to Interrogatory No. 12 as well.

Interrogatory No. 13 asks for the identities of any individual who assumed duties from the terminated individuals identified in response to Interrogatory No. 12, including "dates of employment, birthdates, race, ethnicity, sex, and reasons for termination." (*See* Pl.'s Mem. Supp. at 6.) Medtronic provided only the names of the two employees who assumed Mr. Walton's duties. Mr. Walton claims this answer is deficient because the composition of Medtronic's workforce before and after the RIF is directly relevant to his discrimination claims. The Court agrees. The information is relevant and proportional to the needs of the case, for the same reasons given above for Interrogatories 11 and 12.

Turning to Document Request No. 11, this request asks for all communications and documents pertaining to Medtronic's 2020 decision to launch a company-wide reorganization and restructuring. (*See* Pl.'s Mem. Supp. at 7.) Mr. Walton explains that these documents and communications are necessary to assess whether Medtronic's RIF was legitimate. Medtronic responded with boilerplate objections but also produced documents related to the decision to eliminate Plaintiff's position. Medtronic argues that Mr. Walton has not shown a specific need for company-wide information and that his allegation of a pattern-and-practice of discrimination does not expand the scope of discovery. The Court agrees with Medtronic. The company-wide information Mr. Walton seeks is neither relevant nor proportional to the needs of the case.

### B. Diversity Initiatives

Through Interrogatory No. 14, Mr. Walton asks for the identities of anyone who was "ever involved in any way" in establishing the 40-20-20 plan. (*See* Pl.'s Mem. Supp. at 8.) Relatedly, Interrogatory No. 15 asks Medtronic to describe all of its goals in diversifying its workforce with respect to race, ethnicity, gender or age since January 1, 2016. (*See id.* at 9.) These interrogatories ask for information that is not proportional to the needs of this case. While Mr. Walton may wish to prove that Medtronic terminated him in furtherance of its diversity initiatives, what is relevant are the motivations of those who were involved in his termination. Medtronic has provided the identities of those individuals. Mr. Walton has not shown a particular need for company-wide information about the diversity initiatives.

### C. Organization Charts

Mr. Walton seeks all organization charts for Medtronic's Pain Therapies and Interventional Sales organization from January 1, 2016 to the present and all organization charts for Medtronic's Neuromodulation Division from January 1, 2016 to the present. (*See* Pl.'s Mem. Supp. at 9–10.) These are the organization and the division in which Mr. Walton worked. He argues that the charts are relevant to understanding how Medtronic restructured the organization and division and to determining comparators. Medtronic responds that it has already provided relevant comparator data and that production of the organization charts would be duplicative of that discovery. (Def.'s Mem. Opp'n at 10.) Medtronic did not respond to Mr. Walton's other argument, that organization charts would also be useful to understanding the restructuring of the units in which Mr. Walton worked. The Court agrees with this argument of Mr. Walton's. The charts would not be unduly burdensome to produce and they are proportional to the needs of the case. Accordingly, Medtronic shall supplement its responses to Interrogatory Nos. 6 and 7.

### D. ESI

Finally, Mr. Walton argues that Medtronic has withheld nonprivileged information regarding the search terms it used to locate potentially responsive ESI. This Court previously issued an order on ESI Protocol, which required the parties to meet and confer on the formulation of search methodology, terms, and protocols before an ESI search. (*See* Dkt. No. 55.) Mr. Walton maintains that Medtronic did not make a good faith effort to identify custodians or search terms. (Pl.'s Mem. Supp. at 14.) Medtronic claims that the information Mr. Walton seeks infringes upon work product and amounts to "discovery on

9

discovery." The Court disagrees. Discovery on search terms and search methodology does not infringe on work product. *See Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 110 (E.D. Pa. 2010). Furthermore, the party conducting the ESI search must demonstrate a reasonable effort in searching for documents. *See Smith v. Life Investors Ins. Co. of America*, 2009 WL 2045197, at *7 (W.D. Pa 2009). Finally, the ESI Protocol requires Medtronic to work with Mr. Walton to formulate search methodology, terms, and protocols. Accordingly, Medtronic must supply their ESI search terms and then meet-and-confer with Mr. Walton before re-running the searches, if necessary.

### E. Fees and Costs

Finally, Mr. Walton requests that the Court order Medtronic to pay the attorney's fees and expenses he incurred in bringing this motion. When the Court partially grants and partially denies a motion to compel, Federal Rule of Civil Procedure 37(a)(5)(C) states that a court "may . . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." The Court finds that fees are not appropriate under the circumstances. While Medtronic may have provided boilerplate objections to some of Mr. Walton's discovery requests, it also provided specific objections. The Court cannot conclude that Medtronic's responses and objections were not "substantially justified." *See* Fed. R. Civ. P. 37(a)(5)(A). In addition, both parties participated in good faith in the meet and confer process and resolved some of their disputes. Therefore, no expenses will be awarded.

## IV. CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Brian Walton's Motion to Compel (Dkt. No. 58) is **GRANTED IN PART AND DENIED IN PART**, as set forth fully above.

Dated: August 7, 2023  *s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge