UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

BRIAN WALTON,                                    Case No. 22-CV-0050 (PJS/JFD)

　　　　　　　　Plaintiff,

v.                                                               ORDER

MEDTRONIC USA, INC.,

　　　　　　　　Defendant.

---

　　　Colin J. Pasterski, MJSB EMPLOYMENT JUSTICE LLP, for plaintiff.

　　　Marko J. Mrkonich, LITTLER MENDELSON, P.C., for defendant.

　　　Plaintiff Brian Walton is a longtime employee of defendant Medtronic USA, Inc. ("Medtronic") who alleges that the company discriminated against him on the basis of race and sex in violation of both the Minnesota Human Rights Act ("MHRA") and 42 U.S.C. § 1981.  Specifically, Walton contends that when Medtronic reorganized his department in 2021, Medtronic chose Shelley Edington to head the department rather than Walton, even though, according to Medtronic's own internal assessment tool, Walton was the most qualified candidate and Edington was the least.  Walton alleges that Edington got the job because she is female and black, while Walton is male and white, and because Medtronic executives were under pressure to meet racial and gender quotas.

This matter is now before the Court on Medtronic's motion for summary judgment.  ECF No. 89.[1]  At the hearing on the motion, the Court denied Medtronic's motion insofar as it sought dismissal of Walton's claims on the merits, finding that, if all disputes of material fact are resolved in Walton's favor, there is ample evidence that Medtronic discriminated against him on the basis of race and sex.[2]  The Court took under advisement the question of whether Walton can prove that he was an "employee" who was protected by the MHRA, given that Walton never lived in Minnesota, traveled to Minnesota for work only occasionally until November 2019, and did not work in Minnesota at all after November 2019.  For the reasons that follow, the Court finds that, at the time that Medtronic terminated him, Walton neither lived nor worked in Minnesota, and therefore was not protected by the MHRA.

## I.  BACKGROUND

The Court recites only the facts that are relevant to the issue of whether Walton was protected by the MHRA at the time of his firing:

---

[1]Also before the Court is Walton's motion for leave to file a supplemental memorandum in opposition to defendant's motion for summary judgment.  ECF No. 121.  The Court grants the motion.

[2]Walton also brought age-discrimination claims against Medtronic.  In his briefing, Walton abandoned his disparate-impact age-discrimination claim.  *See* Plf.'s Mem. Opp'n Mot. S.J. 34 n.27, ECF No. 110.  And at the hearing, the Court dismissed Walton's traditional age-discrimination claim, finding that Walton had not submitted sufficient evidence to allow a jury to return a verdict in his favor.

Walton, a white man, worked for Medtronic for 25 years, starting as a sales representative in 1996 and working his way up the corporate ladder to Senior District Manager within the Pain Therapies unit.  As of 2021, Walton's sales territory included Kansas, Iowa, western Missouri, and northwest Kansas.  *See* Walton Dep. 66:7–10, ECF No. 92-1.  Walton reported to supervisors who were based in Minnesota, but he lived and worked in Kansas City, Kansas, and his job required extensive travel within his territory and around the United States.  *See, e.g.*, Walton Dep. 44:6–17, 54:13–19, 64:9–65:9, 261:6–262:22, ECF No. 112-1.  Walton's employment agreements with Medtronic provided that they would be governed by Minnesota law.  *See, e.g.*, Pasterski Decl. Exs. 30–33, ECF No. 113-1 at 97–139.

Walton testified that he typically traveled to Minnesota for work about four times per year during most of his career with Medtronic, usually for district-manager meetings or meetings with customers.  *See* Walton Dep. 228:3–21.  Some time around 2017, however, the frequency with which he traveled to Minnesota on business decreased.  *See* Walton Dep. 236:15–237:4.  Medtronic's travel-reimbursement records show that Walton made only three business trips to Minnesota between February 2018 and July 2021 (when he was terminated), with his last trip taking place in November 2019.  *See* Walton Dep. 235:19–236:6, 238:21–239:8.  Walton alleges that the pandemic accounts for his lack of Minnesota travel during those years, *see* Walton Dep.

267:14–269:1, but the pandemic does not explain the decline in Walton's travel in 2018 and 2019, and Walton regularly traveled for work to places other than Minnesota in 2020 and 2021.  *See* Pu Decl. Exs. 1, 2, ECF No. 118-1.

In July 2021, Walton was terminated after Medtronic eliminated his position in the course of consolidating his business unit with another.  Walton was considered for a District Manager position in the new unit, but Medtronic gave the job to Edington, a black woman.

Edington has performed her new duties while living in Kansas City, Missouri.  *See* Edington Dep. 26:18–24, ECF No. 112-1 at 71.  Edington traveled to Minnesota for work on only two or three occasions during her first two years in her new position, and she testified that, going forward, she expects to come to Minnesota for work only about once per year.  *See* Edington Dep. 56:9–58:24.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. MHRA Claims

Under the MHRA, it is illegal "for an employer, because of race, color, [or] sex . . . to . . . discharge an employee . . . ." Minn Stat. § 363A.08. subd. 2(2). The statute defines an "employee" as "an individual who is employed by an employer *and who resides or works in this state.*" Minn. Stat. § 363A.03, subd. 15 (emphasis added). In moving for summary judgment, Medtronic argues that Walton does not meet the MHRA's definition of "employee" and thus his MHRA claims must fail. Walton concedes that he did not "reside[]" in Minnesota while employed by Medtronic, but argues that he nevertheless "work[ed] in" the state. *Id.*

Minnesota state courts have offered almost no guidance regarding the meaning of "works in" for purposes of the MHRA. The only decisions to meaningfully address the issue come from federal district courts, but many of those decisions are unhelpful because they treat the issue as one of standing. *See, e.g.*, *Wilson v. CFMOTO Powersports, Inc.*, No. 15–CV-3192 (JRT/JJK), 2016 WL 912182, at *5–7 (D. Minn. Mar. 7, 2016); *Longaker v. Boston Sci. Corp.*, 872 F. Supp. 2d 816, 819–820 (D. Minn. 2012). Other decisions are unhelpful because they deploy something akin to a personal-jurisdiction

analysis, asking whether the dispute has sufficient "connections to Minnesota," and considering such factors as where the allegedly discriminatory decision was made. *Lapushner v. Admedus Ltd.*, No. 20-CV-0572 (ADM/TNL), 2020 WL 5106818, at *5 (D. Minn. Aug. 31, 2020).

As this Court pointed out in denying Medtronic's motion to dismiss Walton's complaint, "'whether [a plaintiff] falls within the class of plaintiffs whom [the legislature] has authorized to sue under [some statute]' is a merits question, not a jurisdictional one." *Walton v. Medtronic USA, Inc.*, No. 22-CV-0050 (PJS/HB), 2022 WL 3108026, at *1 (D. Minn. Aug. 4, 2022) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). What matters, then, is whom the MHRA says it protects. In this case, the question is whether Walton "work[ed] in this state" at the time of his termination. Minn. Stat. § 363A.03, subd. 15.

The most thorough discussion of the meaning of "works in" for purposes of the MHRA appears in *Kuklenski v. Medtronic USA, Inc.*, No. 22-CV-0438 (ECT/JFD), 2023 WL 8042490, at *5 (D. Minn. Nov. 20, 2023). The facts of *Kuklenski* are materially indistinguishable from the facts of this case. Kuklenski, like Walton, was a long-time employee of Medtronic. *Id.* at *1. Kuklenski, like Walton, never lived in Minnesota. *Id.* Kuklenski, like Walton, traveled to Minnesota on occasion—more, it seems, than Walton. (Kuklenski traveled to Minnesota at least nine days in 2017, at least nine days

in 2018, and approximately 14 days in 2019.  *Id.*)  Kuklenski never traveled to Minnesota after February 2020, just as Walton never traveled to Minnesota after November 2019.  *Id.*  Kuklenski, like Walton, lost her job following Medtronic's restructuring in late 2020 and early 2021, although Kuklenski was not terminated until December 2021.  *Id.* at *2–3.  Finally, Kuklenski, like Walton, sued Medtronic under the MHRA.

The critical issue in *Kuklenski* was whether, at the time of her firing, Kuklenski "work[ed] in" Minnesota.  Like this Court, Judge Tostrud deemed the issue to be one of statutory construction, not jurisdictional standing, *id.* at *4, and like this Court, Judge Tostrud rejected the "Minnesota-contacts based approach to the MHRA definition of employee," *id.* at *5.  Instead, Judge Tostrud carefully examined the language of the MHRA and held that

> to "work[ ] in this state" means Kuklenski must perform duties of her job within the limits, bounds, or area of Minnesota.  In other words, the statute requires at a minimum some physical presence within the geographic boundaries of the State of Minnesota. . . . [T]he State of Minnesota is a geographical entity with set boundaries.  It would be unreasonable to read "works in Minnesota" any other way given the context. . . .

*Id.*

Judge Tostrud found determinative the fact that "Kuklenski did not travel to Minnesota for work from February 2020 to December 8, 2021, when she was fired."  *Id.*  According to Judge Tostrud, "[w]ithout any physical presence in Minnesota, Kuklenski

did not work in Minnesota in late 2020 or 2021, and thus was not an employee protected by the MHRA."  *Id.*

Judge Tostrud expressly rejected Kuklenski's argument that "an employee's past physical presence in Minnesota while working for the same employer is enough to protect [her] under the MHRA."  *Id.* at *6.  Judge Tostrud explained:

> This interpretation is not reasonable.  To start, reside and work in the MHRA are written in the present tense, a tense used to "express[ ] action or state in the present time and is used of what occurs or is true at the time of speaking and of what is habitual or characteristic."  Merriam-Webster's Collegiate Dictionary 982 (11th Ed. 2003) . . . .  If the Minnesota legislature wanted to protect individuals who resided or worked at some past time in Minnesota, it could have expressly done so.  Moreover, Kuklenski's interpretation contradicts the presumption against extraterritoriality.

*Id.*

The Court agrees with Judge Tostrud's analysis.  It is difficult to define with precision who "works in" Minnesota.  On one end of the spectrum, no one would say that someone "works" in Minnesota because, on a single occasion 20 years ago, he made a one-day business trip to Minnesota (but otherwise has never set foot in the state).  On the other end of the spectrum, everyone would say that someone "works" in Minnesota if, for the past 20 years, she has worked just about every day in an office in Minnesota, even if, on the day she was fired, she happened to be in New York on a short business

-8-

trip.  Non-resident plaintiffs who bring MHRA claims will be scattered along this spectrum, and close cases will have to be decided by juries.

This case, like *Kuklenski*, is not close.  At the time that Walton was terminated in July 2021, he had not set foot in Minnesota since November 2019.  Walton's 20-month absence—like Kuklenski's 22-month absence—means that Walton, like Kuklenski, "did not work in Minnesota in . . . 2020 or 2021, and thus was not an employee protected by the MHRA."  *Id.* at *5.  Walton's past travels to Minnesota—which were actually less frequent and less recent than Kuklenski's—do not change that conclusion, for the reasons explained by Judge Tostrud.  *See id.* at *6.

One final point:  Walton seems to suggest that, even if he is not an "employee" who is permitted to bring a claim under the MHRA, he should nevertheless be able to sue under the MHRA because his contract with Medtronic contains a Minnesota choice-of-law clause.  This Court rejected an identical argument in *North Coast Tech. Sales, Inc. v. Pentair Tech. Prods., Inc.*, No. 12–CV–1272, 2013 WL 785941, at *2–3 (D.Minn. Mar. 4, 2013).  As this Court explained:

> This view . . . reads too much into a generic choice-of-law clause.  The choice-of-law clause in the Pentair-North Coast contract dictates that this Court must apply the laws of the State of Minnesota—that is, that this Court must apply the statutes enacted by the Minnesota Legislature and the opinions issued by the Minnesota Supreme Court *as they are written*.  But the choice-of-law clause does not change those statutes and judicial decisions.  If, for example, the

> [Minnesota Termination of Sales Representative Act
> ("MTSRA")] provided that it protected only sales
> representatives who sold automobiles or who employed
> fewer than 15 people—and if North Coast did not sell
> automobiles or did not employ fewer than 15 people—then
> North Coast would not be protected under the MTSRA, even
> though its contract with Pentair includes a Minnesota
> choice-of-law clause.  Again, the choice-of-law clause *applies*
> Minnesota law; it does not *change* Minnesota law.

Id. at *2.

For these reasons, Walton's claims under the MHRA are dismissed with
prejudice.  His sole remaining claim—for racial discrimination in violation of 42 U.S.C.
§ 1981—will be tried to a jury.  *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273,
287 (1976) ("§ 1981 is applicable to racial discrimination in private employment against
white persons.").

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Plaintiff's  motion for leave to file a supplemental memorandum in
      opposition to defendant's motion for summary judgment [ECF No. 121] is
      GRANTED.

2.    Defendant's motion for summary judgment [ECF No. 89] is GRANTED IN
      PART and DENIED IN PART as follows:

a.  The motion is GRANTED as to Counts I, II, III, and IV of the second

amended complaint [ECF No. 70].  Those claims are DISMISSED

WITH PREJUDICE AND ON THE MERITS.

b.  The motion is DENIED as to Count V of the second amended

complaint [ECF No. 70].

Dated:  June 20, 2024                          s/Patrick J. Schiltz_____
                                               Patrick J. Schiltz, Chief Judge
                                               United States District Court